IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

ALVIN ROYCE WESTBERRY, )
)
    Plaintiff, )
)
v. )   Civil Action No. 3:10CV907–HEH
)
PAM THRIFT, *et al.*, )
)
    Defendants. )

## MEMORANDUM OPINION
(Granting Motions to Dismiss and Dismissing Action)

Alvin Royce Westberry, a Virginia inmate proceeding *pro se*, filed this 42 U.S.C. § 1983 action, naming Pam Thrift[1] ("Thrift") and Helen Fahey[2] ("Fahey") as defendants (collectively "Defendants"). The matter is before the Court on Defendants' Motions to Dismiss and the Court's authority to review prisoner complaints under 42 U.S.C. § 1997e(c)(1).[3] For the reasons set forth below, the action will be dismissed.

---

[1] Thrift is a parole officer in Georgia.

[2] Fahey was the Chairwoman of the Virginia Parole Board.

[3] Pursuant to the Prison Litigation Reform Act, this Court must dismiss any action filed by a prisoner if the Court determines the action (1) "is frivolous" or (2) "fails to state a claim upon which relief can be granted." 42 U.S.C. § 1997e(c)(1); *see* 28 U.S.C. § 1915A. The "frivolous" standard includes claims based upon "'an indisputably meritless legal theory,'" or claims where the "'factual contentions are clearly baseless.'" *Clay v. Yates*, 809 F. Supp. 417, 427 (E.D. Va. 1992) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)). The second standard is the familiar standard for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).

## I. STANDARD OF REVIEW

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952. This principle applies only to factual allegations and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," *id.* (citation omitted), stating a claim that is "plausible on its face," rather than merely "conceivable." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court

2

to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Therefore, for a claim to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)).

Lastly, while the Court liberally construes *pro se* complaints, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), it does not act as the inmate's advocate, *sua sponte* developing statutory and constitutional claims the inmate failed to clearly raise on the face of his complaint. *See Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## II. ALLEGATIONS

Despite the Court's repeated admonitions, Westberry produces only a limited discussion of the law and facts upon which he seeks to hold Defendants liable. Specifically, by Memorandum Order entered on April 20, 2011, the Court informed Westberry that he must submit a particularized complaint that clearly identifies each civil right violated and explain why he believes that each Defendant is liable for a violation of that right. (ECF No. 6.) On June 6, 2011, the Court received a complaint from Westberry that did not comply with the foregoing instructions. (ECF No. 9.) Therefore, by Memorandum Order entered on June 28, 2011, the Court again directed Westberry to submit an appropriate complaint. (ECF No. 11.) On July 12, 2011, the Court received

3

Westberry's Particularized Complaint, which is barely more lucid than his previous complaints. (ECF No. 12.)

To adequately illustrate Westberry's non-compliance with this Court's instructions, the Court sets forth the entirety of the Particularized Complaint now under review:

1. <u>Pam Thrift</u>, Parole Officer, Georgia, 243 North Brunswick Street, Jesup, Georgia 31546.

2. <u>Helen Fahey</u>, Chairwoman, Virginia Parole Board 6900 Atmore drive, Richmond, Virginia 23225.

3. Three months after plaintiff called the defendant a liar, she became his parole supervisor.

4. On November 4, 2008, Defendant Thrift got a Wayne County Deputy Sheriff to sign a warrant for plaintiff. However the defendant did not have the warrant served until November 11, 2008, this being a holiday.

5. On November 11, 2008, the defendant called plaintiff to the parole office, and told him, that she was having him arrested, and that he had the right to a[n] evidentiary hearing within 72 hours. Plaintiff told the defendant that he wanted a[n] evidentiary hearing.

6. On February 17, 2009, plaintiff posted bond for $5,000.00 dollars. The defendant told plaintiff's attorney and family that she had notified Virginia that he had posted bond on the Georgia charge. After not hearing from Virginia in over 50 days, plaintiff needed to see a heart specialist. Plaintiff got his Attorney, Mr. Alvin Leaphart to get him a plea, so he could get turned loose or come back to Virginia so he could see a heart specialist. On April 14, 2009, plaintiff entered a plea to a ... misdemeanor. On May 5, 2009, plaintiff was brought back to Virginia, where soon after he was taken to the Medical College of Virginia, where he received treatment for his heart.

## CONFLICT OF INTEREST

7. The Defendant Thrift, should never have been plaintiff's parole officer, because of a conflict of interest.

8. Plaintiff was not allowed a[n] evidentiary hearing for the parole violation as required by Virginia Law as stated in Virginia Code § 53.1-168, which states, **PROCEDURE WHEN REINCARCERATION OF OUT-OF-STATE PAROLE OR PROBATION SHOULD BE CONSIDERED.** "When supervision of a parolee or probationer is being administered by this Commonwealth pursuant to Article 4 (§ 53.1-166 et seq.) of this chapter and such parolee or probationer is arrested pursuant to the provisions of § 53.1-162 or upon a warrant issued by the State where he was paroled or placed on probation and charged with violation of the terms or condition of parole or probation, a preliminary hearing at or near the site of the alleged violation may be held in accordance with this article. The purpose of such hearing shall be to determine whether there is probable cause to believe that the parolee has committed a violation of a condition of parole or probation." The Defendant Pam Thrift, denied plaintiff his right to due process of law, by not having a[n] evidentiary hearing.

9. Plaintiff was denied medical care at the Wayne County Jail, Jesup, Georgia, because plaintiff was being held for Virginia, after he posted bond, on the Georgia charge, and the jail needing the parole officer's okay to take him to a heart specialist, because it being so expensive.

10. The Defendant, Pam Thrift, has caused plaintiff undue stress and mental anguish, by her lies and deceit (deliberate indifference) and should never be in charge of another person's life, limb, or property, without due process. The defendant did violate plaintiff's rights to due process under the 14th Amendment to the United States Constitution.[4]

11. The Defendant, Helen Fahey, has ignored plaintiff's request for information regarding plaintiff's parole officer in Jesup, Georgia.

---

[4] "No State shall . . . deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws. U.S. Const. amend. XIV, § 1.

Being if Georgia notified Virginia if plaintiff had or had not posted bond, making Virginia responsible to come get plaintiff within 30 days after notified. The defendant has caused plaintiff undue stress and mental anguish, having to worry about his heart and missing a deadline for a Petition For Writ of Habeas Corpus, that with the information. Plaintiff could have gotten his freedom under due process. But since plaintiff's rights were violated by the defendants (deliberate indifference) those rights that was violated was "clearly established" in Virginia Code § 53.1–168. The defendants were personally responsible for the violation of plaintiff's rights under the 14th Amendment (Equal Protection of Law) to the United States Constitution.

## PRAYER

Plaintiff, prays that this Honorable Court will grant this Civil Action, and give him the relief that this Honorable Court deems just and proper. And that plaintiff is a layman not learned in the Law.

(Part. Compl. 1–3 (spacing and spelling corrected.)

Discerning his claims from these allegations, Westberry appears to seek relief upon the following grounds:[5]

Claim 1    (a) Thrift violated Westberry's right to procedural due process by failing to provide Westberry with an evidentiary hearing for his parole violation hearing as required by section 53.1–168 of the Virginia Code. (*Id.* ¶ 8.)

    (b) Thrift violated Westberry's right to substantive due process by failing to ensure that Westberry received appropriate medical care while incarcerated in the Wayne County Jail. (*Id.* ¶ 9.)

---

[5] "Principles requiring generous construction of *pro se* complaints are not, however, without limits. . . . Even in the case of *pro se* litigants, [courts] cannot be expected to construct full blown claims from sentence fragments . . . ." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). For example, Westberry contends that Fahey somehow violated his rights by failing to provide information about Westberry's parole officer in Georgia and by failing "to come get plaintiff within 30 days after notified" that Westberry had posted bond. (Part. Compl. ¶ 11.) Westberry, however, fails to articulate under what theory he had a constitutional right to such information or to a prompt transfer to Virginia.

Claim 2  (a)  Fahey violated Westberry's right to procedural due process by failing to provide Westberry with an evidentiary hearing for his parole violation hearing as required by section 53.1–168 of the Virginia Code. (*Id.* ¶ 11).

(b)  Fahey violated Westberry's right to substantive due process by delaying his removal to Virginia which resulted in a delay in Westberry receiving appropriate medical care. (*Id.*)

Claim 3  Thrift and Fahey violated Westberry's right to equal protection. (*Id.*)

### III. DISCUSSION

To state a viable claim under 42 U.S.C. § 1983, a plaintiff must allege that a person acting under color of state law deprived him or her of a constitutional right or a right conferred by a law of the United States. *See Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998). Additionally, "[b]ecause vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

#### A. Alleged Denial of Procedural Due Process with Respect to Parole Revocation

In Claims 1(a) and 2(a), Westberry vaguely asserts that Defendants denied him due process with respect to the revocation of his parole. The Due Process Clause applies when government action deprives an individual of a legitimate liberty or property interest. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972). The first step in analyzing a procedural due process claim is to identify whether the alleged conduct affects a protected interest. *See Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997).

Liberty interests "may arise from the Constitution itself, by reason of guarantees implicit in the word liberty, or [they] may arise from an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (internal citations and quotations omitted).

### 1. Alleged Deprivation of Procedural Due Process with Respect to a Prompt Preliminary Hearing on His Parole Revocation

Under the Constitution, "the liberty of a parolee, although indeterminate .... is valuable and must be seen as within the protection of the Fourteenth Amendment. Its termination calls for some orderly process, however informal." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). As pertinent here, the Supreme Court concluded that the revocation of parole requires a preliminary hearing at the time of the arrest for the parole violation, followed by a revocation hearing before the parole board. *Id.* at 485–88.[6] The Supreme Court explained that the purpose of the preliminary hearing is "to determine whether there is probable cause or reasonable ground to believe that the arrested parolee has committed acts that would constitute a violation of parole conditions." *Id.* at 485.

Here, Westberry contends Defendants "denied plaintiff his right to due process of law, by not having a[n] evidentiary hearing." (Part. Compl. ¶ 8.) Liberally construed, Westberry apparently challenges the denial of the preliminary parole revocation hearing discussed in *Morrissey*. Georgia authorities, however, initially arrested Westberry on a

---

[6] The Supreme Court indicated that the preliminary hearing should be conducted "as promptly as convenient after [the parolee's] arrest." *Morrissey*, 408 U.S. at 485.

new state criminal charge rather than on a parole violator warrant. (Part. Compl. ¶ 6.)[7] Virginia authorities simply lodged the parole violator warrant as a detainer. The parole violator warrant caused Westberry's detention only after February 17, 2009, when Westberry posted bond on the Georgia criminal charge.

Westberry did not enjoy any right to a preliminary hearing with respect to the parole violator charge until that parole violator warrant deprived him of some liberty. *See Moody v. Daggett*, 429 U.S. 78, 89 (1976) (concluding the government "has no constitutional duty to provide [a parolee] an adversary parole hearing until he is taken into custody as a parole violator by execution of the warrant"); *Posey v. Dewalt*, 86 F. Supp. 2d 565, 570 (E.D. Va. 1999) (explaining that a parolee has no right to a preliminary hearing when the parole violator warrant is simply lodged as a detainer). Westberry did not suffer any loss of liberty as a result of the parole violator warrant until February 17, 2009.[8] Furthermore, no need existed for the preliminary hearing required by *Morrissey* after April 14, 2009, when Westberry pled guilty to the new criminal charge in Georgia. That conviction established probable cause that Westberry had violated the terms of his parole. *See Moody*, 429 U.S. at 86 n.7; *Diehl v. McCash*, 352 F. App'x 99, 101 (7th Cir. 2009); *Bartley v. Snyder*, No. 01-196-KAJ, 2004 WL 546783, at *6 (D. Del. Mar. 18, 2004). Accordingly, Westberry's due process claim turns on

---

[7] In his response to Fahey's Motion to Dismiss, Westberry alleges that after he was arrested on the new criminal charges in Georgia, "a week later Virginia sent a detainer warrant to Georgia to hold Plaintiff." (Pl.'s Resp. Def. Fahey's Mot. Dismiss ¶ 5.)

[8] According to the Particularized Complaint, Georgia authorities detained Westberry from November 11, 2008 until February 17, 2009 on Georgia criminal charges. On February 17, 2009, Westberry was released on bond from the Georgia criminal charges. Nevertheless, Westberry remained detained after February 17, 2009 as a result of the parole violator warrant issued by Virginia authorities.

Defendants' failure to conduct a preliminary hearing during the fifty-six day period between February 17, 2009 and April 14, 2009.

To establish a due process violation for the failure to conduct a preliminary hearing during this period, Westberry must allege facts that plausibly suggest that the delay was unreasonable and that he suffered prejudice. *See Bartley*, 2004 WL 546783, at *6 (citing *Vargas v. U.S. Parole Comm'n*, 865 F.2d 191, 194 (9th Cir. 1988); *Heath v. U.S. Parole Comm'n*, 788 F.2d 85, 90 (2d Cir. 1986); *Maslauskas v. U.S. Bd. of Parole*, 639 F.2d 935, 938 (3d Cir. 1980)). He has not done so, because a 56 day delay is not unreasonable absent a showing of prejudice. *See Vargas*, 865 F.2d at 194 ("[A] preliminary hearing delay of 40 days without any evidence of prejudice is not unreasonable." (citing *Heath*, 788 F.2d at 89)). Such an omission alone is fatal to his due process claim.

Westberry also fails to allege facts that plausibly suggest that either Thrift or Fahey, through their "own individual actions," caused the delay of Westberry's preliminary hearing. *Iqbal*, 556 U.S. at 676. Although Thrift acted as Westberry's parole officer, Westberry acknowledges that officials in Virginia issued the parole violator warrant—not Thrift. (Pl.'s Resp. Def. Fahey's Mot. Dismiss at ¶ 5.) Westberry fails to direct the Court to law or facts indicating that Thrift bore responsibility for ensuring that Westberry received a prompt preliminary hearing on the parole violator warrant. Indeed, Westberry fails to allege facts plausibly suggesting that Fahey even knew about Westberry's parole revocation proceedings, much less that her inaction or indifference contributed to any failure to conduct a prompt preliminary hearing. *See Shehee v.*

10

*Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) ("At a minimum a plaintiff must [allege facts that suggest] that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct . . . .") (internal quotation marks omitted). Accordingly, Westberry has failed to plead a claim of denial of due process against either Defendants for the absence of a prompt preliminary hearing.

### 2. Alleged Deprivation of State-Created Liberty Interest

Westberry also asserts that Thrift and Fahey denied him due process by failing to conduct a preliminary hearing in Georgia as required by Va. Code § 53.1-168. That statute provides:

> **Procedure when reincarceration of out-of-state parolee or probationer should be considered.**
>
> When supervision of a parolee or probationer is being administered by this Commonwealth pursuant to [the Uniform Act for Out-of-State Parole Supervision] and such parolee or probationer is arrested pursuant to the provisions of § 53.1–162 or upon a warrant issued by the state where he was paroled or placed on probation and charged with violation of the terms or conditions of parole or probation, a preliminary hearing at or near the site of the alleged violation *may* be held in accordance with this article. The purpose of such hearing shall be to determine whether there is probable cause to believe that the parolee or probationer has committed a violation of a condition of parole or probation.

Va. Code § 53.1-168 (West 2012) (emphasis added).

To demonstrate the existence of a state-created liberty interest, Westberry at a minimum must show that "the language of the pertinent statute or regulation creates sufficient limits on official discretion such that it could be deemed to create a liberty interest." *Puranda v. Johnson*, No. 3:08CV687, 2009 WL 3175629, at *3 (E.D. Va. Sept. 30, 2009). "State laws create a liberty interest only when the statute's language 'plac[es]

11

substantive limitations on official discretion.'" *Id.* at *4 (alteration in original) (quoting *Slezak v. Evatt*, 21 F.3d 590, 594 (4th Cir. 1994)). The United States Court of Appeals for the Fourth Circuit explained the exacting nature of this requirement in *Slezak* as follows:

> What this all comes to is that constitutionally protected liberty interests are only created by state law regimes which in the end effectively say to inmates: "If facts A, B, and C are established in an appropriate fact-finding process, you are thereupon legally entitled to a more favorable ... classification than you presently have," or, "Unless facts A, B, and C are so established, you are legally entitled not to be placed in a less favorable classification than you now have."

21 F.3d at 595. Section 53.1-168 falls far short of this exacting requirement. That statute merely permits, but does not require, the parole authority to conduct the preliminary hearing near the site of the alleged violation. *See* Va. Code § 53.1-168 ("[A] preliminary hearing at or near the site of the alleged violation *may* be held . . . .") (emphasis added). Accordingly, Westberry fails to allege facts that plausibly suggest he had a protected liberty interest in receiving a preliminary parole revocation in Georgia. Accordingly, Claims 1(a) and 2(a) will be dismissed.

### B. Alleged Denial of Adequate Medical Care

In order to plead a constitutional claim for the denial of adequate medical care, an inmate must allege facts that indicate the defendant subjectively acted with deliberate indifference to his objectively serious medical needs. *See Young v. City of Mount Ranier*, 238 F.3d 567, 575 (4th Cir. 2001). Under the objective prong, a medical need is "serious" if it "'has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's

attention.'" *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (quoting *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)); *see Webb v. Hamidullah*, 281 F. App'x 159, 165 (4th Cir. 2008) (citing *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980)). Regarding the second, subjective prong, "[d]eliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)). Deliberate indifference requires the plaintiff to allege facts that suggest that a particular defendant actually knew of and disregarded a substantial risk of serious harm to his person. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Westberry has failed to allege facts indicating that he faced an imminent, substantial risk of serious harm in the absence of prompt treatment for his heart condition. *Cf. Kersh v. Bounds*, 501 F.2d 585, 589 (4th Cir. 1974) ("It may not be seriously contended that any prisoner detained for however short a period is entitled to have all his needed elective medical care performed while in custody"). Indeed, Westberry fails to allege, as he must, that he sustained any injury from the delay in seeing a heart specialist. *See Smith v. FCM–MTC Med., LLC*, 3:10CV352, 2011 WL 1085975, at *9 (E.D. Va. Mar. 21, 2011) (observing that inmate seeking to recover for a delay in the provision of medical care must allege facts that suggest "that the delay resulted in substantial harm") (quoting *Webb*, 281 F. App'x at 167 n.13) (internal quotation marks omitted). Moreover, in his Particularized Complaint, Westberry fails to allege facts that indicate Defendants knew of Westberry's heart condition, much less that Defendants

perceived that Westberry required prompt medical attention for that condition. Because Westberry has failed to allege such facts, Claims 1(b) and 2(b) will be dismissed.

C. **Alleged Denial of Equal Protection**

"The Equal Protection Clause . . . is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citing *Plyer v. Doe*, 457 U.S. 202, 216 (1982)). In order to state an equal protection claim, Westberry must allege facts indicating: (1) that he and a comparator were treated differently and were similarly situated; and (2) that the different treatment was the result of discrimination. *See Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (citation omitted). Westberry fails to allege facts that indicate Defendants treated him differently than any other similarly situated inmate. Accordingly, Claim 3 will be dismissed.

## IV. Conclusion

The Motions to Dismiss (ECF Nos. 16, 24) will be granted. Westberry's claims and the action will be dismissed accordingly.

An appropriate order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
United States District Judge

Date: Sept. 6, 2012
Richmond, Virginia